IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-2-FL

EDDIE ISAIAH BUMPASS,       )
         )
    Plaintiff,        )
         )
    v.        )       **MEMORANDUM &**
         )       **RECOMMENDATION**
CAROLYN W. COLVIN,       )
Acting Commissioner of Social Security,    )
         )
    Defendant.       )
         )

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Eddie Bumpass ("Plaintiff") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-21] be denied, and that Defendant's Motion for Judgment on the Pleadings [DE-26] be granted.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability and DIB on February 20, 2011 (Tr. 46) and SSI on March 15, 2011 (Tr. 47), alleging disability beginning October 12, 2010 (Tr. 169, 173). The application was denied initially and upon reconsideration, and a request for

hearing was filed. (Tr. 46-47, 84-85.) On July 2, 2012, a hearing was held before Administrative Law Judge Katherine D. Wisz ("ALJ"), who issued an unfavorable ruling on August 24, 2012. (Tr. 11, 18.) On November 7, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I.      Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II.    Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process.    The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy.    *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).    The burden of proof and production during the first four steps of the inquiry rests on the claimant.    *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).    At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform.    *Id*.

## III.    ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act.    At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since October 12, 2010.    (Tr. 13.)    Next, the ALJ determined Plaintiff had the following severe impairment: osteoarthritis in the form of degenerative disc disease (minimal) in cervical and lumbar spine.    (*Id.*)    The ALJ also found that Plaintiff suffered from the following non-severe impairment: diabetes mellitus.    (*Id.*)    However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.    (Tr. 13-14.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and found that Plaintiff had the ability to "perform the full range of medium work, or work which requires maximum lifting of 50 pounds, frequent lifting of up to 25 pounds, and sitting, standing or walking approximately 6 hours in an 8 hour day." (Tr. 14.) In making this assessment, the ALJ found Plaintiff's statements about the severity of his symptoms not fully credible. (Tr. 15.) At step four, the ALJ concluded Plaintiff was capable of performing the requirements of his past relevant work "as a machine operator, aluminum siding installer, and shop supervisor" as generally performed. (Tr. 17-18.)

## IV.   Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on three grounds. Plaintiff first contends that substantial evidence does not support the ALJ's finding that Plaintiff is capable of performing medium work. Second, Plaintiff asserts that the ALJ erred in Plaintiff's credibility determination. Lastly, Plaintiff claims the ALJ erred by not giving controlling weight to a treating physician and in failing to state the weight given to other medical opinions in the record.

### A.   Residual Functional Capacity

Plaintiff contends that substantial evidence does not support the ALJ's determination that Plaintiff is capable of performing medium work. Plaintiff claims the ALJ failed to consider exertional and nonexertional limitations when assessing Plaintiff's RFC, as well as the combined effect of Plaintiff's severe and non-severe impairments. However, Plaintiff does not state or explain how his impairments require limitations beyond those determined by the ALJ.

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite

4

impairments and related symptoms.   SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also*

20 C.F.R. § 416.945(a)(1).   In determining the RFC, the ALJ considers an individual's ability to

meet the physical, mental, sensory and other requirements of work.   20 C.F.R. § 416.945(a)(4).

It is based upon all relevant evidence and may include the claimant's own description of

limitations from alleged symptoms.   SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §

416.945(a)(3).   Finally, the RFC assessment "must include a discussion of why reported

symptom-related functional limitations and restrictions can or cannot reasonably be accepted as

consistent with the medical and other evidence."   SSR 96-8p, 1996 WL 374184, at *7.

Here, the medical evidence of record supports the ALJ's finding that Plaintiff is limited to

a full range of medium work.   (Tr. 14.)   Plaintiff's most recent medical records indicate that he

tested negative for rheumatism and was diagnosed with osteoarthritis.   (Tr. 334.)   The records

further indicate that Plaintiff's symptoms are worse in the morning and are especially felt in his

hands.   (Tr. 338.)   Beyond Plaintiff's diagnosis, it is noted that Plaintiff moves his extremities

well, has a normal gait, suffers from mild degenerative disc disease, has had a slight limited range

of motion in flexion and extension, exhibited a slightly weak grip, and has had x-rays with minimal

findings in regards to his osteoarthritis.   (Tr. 347-48, 356. 359, 362-64.)   Other than an unsigned

medical source statement opining that Plaintiff was not capable of any work, all of the other

medical evidence indicates Plaintiff's symptoms are relatively mild.[1]   After analyzing the medical

record, the consulting state agents recommend limiting Plaintiff to medium work.   (Tr. 55, 64, 72,

81.)   Furthermore, the ALJ considered the combined effects of Plaintiff's impairments as evident

in her extensive analysis of Plaintiff's medical records that refer to both Plaintiff's diabetes and his

complaints of neck pain and hand numbness, as well as Plaintiff's degenerative disc disease.   (Tr.

---

[1] The weight given to the medical source statement is discussed below.

15-17.)   Thus, substantial evidence supports the ALJ's finding that Plaintiff is capable of medium work.

## B.    Credibility

Plaintiff next claims that the ALJ erred in his credibility assessment in that Plaintiff's testimony was consistent with the medical evidence of record.   In assessing a claimant's credibility, the ALJ must follow a two-step process.   First, the ALJ must determine whether the claimant's medically determinable impairments could reasonably cause the alleged symptoms. *Craig*, 76 F.3d at 594–95.   Next, the ALJ must evaluate the credibility of the claimant's statements regarding those symptoms.   *Id.* at 595.   The Social Security regulations require that an ALJ's decision "contain specific reasons for the finding on credibility, supported by the evidence in the case record, and . . . be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."   SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 96-7p, 1996 WL 374186, at *1.   The ALJ must consider the following factors in addition to objective medical evidence when assessing the credibility of an individual's statements:

(1) Claimant's daily activities;
(2) The location, duration, frequency, and intensity of . . . pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate pain or other symptoms;
(5) Treatment, other than medication, received for relief of pain or other symptoms;
(6) Any measures used to relieve pain or other symptoms; and
(7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

Case 5:14-cv-00002-FL   Document 28   Filed 11/20/14   Page 6 of 11

20 C.F.R. § 404.1529(c)(3) (2013); SSR 96-7p, 1996 WL 374186, at *3.

The ALJ found Plaintiff not fully credible to the extent his statements are inconsistent with the RFC. The ALJ explained his analysis of Plaintiff's testimony and the medical evidence, stating:

> In terms of the claimant's alleged impairments, the Administrative Law Judge finds that the overall objective evidence does not support disability. In July 2009, a cervical spine x-ray was indicative of muscular spasms and mild degenerative changes with forminal stenosis. Almost two years later, his cervical x-ray showed only mild degenerative disc disease and mild osseous forminal narrowing [in] the left C4-5. His lumbar radiology report revealed even less and was significant for minimal degenerative disc disease at L3-4 and L5-S1. Regarding his hypertension and diabetes mellitus, it was noted on multiple occasions that they were at goal at times. It was also reported that he had not been compliant with medication, exercises, diet, and smoking cessation. The claimant indicated in January 2011 that he had not sought treatment for four months because he had been laid off from his last job, which was not an indication of his inability to work. The Administrative Law Judge notes that the claimant might have certain restrictions; however, his reported inability to sit, stand, and lift for certain periods and weights were not completely credible. A treating source even indicated that he was able to sit, stand, and lift greater periods and weights. The claimant's daily activities reflect a greater functioning ability, such as his ability to cook, care for his child, drive, and perform household chores. The Administrative Law Judge finds that the claimant retains the capacity to perform work activity, which includes his past work as identified by the vocational expert. The vocational expert testified that the jobs as machine operator, aluminum installer, and shop supervisor as performed in the national economy were within his current residual functional capacity.

(Tr. 16-17.) Further, the ALJ extensively analyzed the medical record, as well as Plaintiff's testimony, within his decision. Thus, the ALJ properly evaluated Plaintiff's credibility and, based on the evidence of record, determined that Plaintiff's statements concerning his inability to work were not fully credible.

## C. Treating Physician

Lastly, Plaintiff contends that the ALJ erred in the weight she credited to the unsigned medical source statement that Plaintiff asserts was given by his treating physician.

7

Ordinarily, a treating physician's opinion should be accorded greater weight than the opinion of a non-treating physician's opinion, but the court is not required to give the testimony controlling weight in all circumstances. *Mastro*, 270 F.3d at 178. Rather, a treating physician's opinion on the nature and severity of a claimant's impairment is given controlling weight only if it is "supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence on the record." *Id*; *see also* 20 C.F.R. § 404.1527(c)(2) (2013). "[B]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro*, 270 F.3d at 178 (quoting *Craig*, 76 F.3d at 590) (internal quotation marks omitted). Thus, the ALJ has the discretion to give less weight to the treating physician's testimony in the face of contrary evidence. *Id.*

If an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must then determine the weight to be given to the treating physician's opinion by applying the following factors: (1) the length of treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidentiary support for the physician's opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist in the field in which the opinion is rendered. 20 C.F.R. 404.1527(c)(2)–(5); *see also Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (E.D.N.C. 2011).

Plaintiff argues that the ALJ disregarded Dr. Koinis's medical records and opinions and that, as Plaintiff's treating physician, Dr. Koinis's opinions should be accorded greater weight. Plaintiff claims that the unsigned medical source statement contained in the record was done by Dr. Koinis, though the document is unsigned. (Tr. 373-76.) Plaintiff attached an exhibit to his memorandum that appears to be an exact copy of the medical source statement signed by Dr.

8

Koinis and dated April 20, 2014.  (Pl.'s Mem. Mot. J. Pleadings, Ex. 1.)  In her decision, the ALJ

gave little weight to the medical source statement, explaining:

> In an undated and unsigned Medical Source Statement of Ability to Do
> Work-Related Activities (Physical), it was noted that the claimant was limited to
> lifting/carrying 20 pounds occasionally and lifting/carrying 10 pounds frequently.
> It was also noted that he was limited to standing and walking less than two hours in
> an eight hour day and that he must periodically alternate sitting and standing.
> There was reported limitation in his pushing and/or pulling in April 2011, which
> [was] consistent with osteoarthritis (Exhibit 7-F).  Given the unknown and
> unidentified source of this opinion, it will be given little weight.
>
> . . . .
>
> As for the opinion evidence, the Administrative Law Judge notes that the
> claimant's representative argued the use of Exhibit 7-F would allow benefits based
> on the Medical Vocational Guidelines.  These findings, however, were based on
> radiology reports, which were significant for mild and minimal degenerative disc
> disease.  The claimant can clearly function at a greater level, exertionally than
> noted in the statement.  In addition, the statement was unsigned and undated.  The
> Administrative Law Judge assigns great weight to the State agency medical
> consultant's opinions because they were able to review the claimant's entire
> medical file.

(Tr. 16-17.)

Even assuming the medical source statement in the file was done by Dr. Koinis, substantial

evidence supports the ALJ's determination that Dr. Koinis's opinion was entitled to little weight.

Though instances are noted in the record that Plaintiff is "stiff in the morning" (Tr. 258),

experienced neck pain (Tr. 240, 260), and was diagnosed with osteoarthritis (Tr. 356), Plaintiff's

x-rays presented minimal findings. Throughout the medical record, it is reported that Plaintiff

"moves all extremities well" and has a normal gait.  (*See, e.g.*, Tr. 335, 339, 345, 348, 357, 366,

369, 371.)    On June 9, 2011, Plaintiff declined a prescription for a non-steroidal

anti-inflammatory drug, indicating that ibuprofen worked as well for him. (Tr. 356.) As of

February 20, 2012, Plaintiff reported no joint pain or injury. (Tr. 347.)   On April 11, 2012,

Plaintiff was seen for pain in his left knee, which he had been experiencing for ten days after he

"had been walking a lot." (Tr. 344.)   He indicated that his knee had "gotten better but [was] still

not completely well." (Tr. 344.) This appears to have fully resolved, as there is no evidence of a follow-up visit.

On the other hand, the medical source statement greatly limits Plaintiff's physical capabilities. (Tr. 373-74.) Dr. Koinis stated that the evidence in support of his recommendations were the x-rays taken in April 2011. (Tr. 374.) However, these revealed the existence of minimal degenerative disc disease and do not account for the drastic restrictions Dr. Koinis recommended. The ALJ based her decision to give the medical source statement little weight on the fact that the statement was inconsistent with the medical evidence presented to the ALJ, as well as the fact that, as of the date of the ALJ's decision, the statement was unsigned and from an undetermined source. (Tr. 16.) Thus, the ALJ did not err in assigning little weight to the medical source statement.

Plaintiff also argues that the ALJ did not assign weight to other medical opinions in the record. An ALJ must evaluate all medical opinions included in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). A medical opinion is a statement "from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see also* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). A review of the record in this case reveals that the only medical opinions submitted concerning Plaintiff's impairments are the medical source statement by Dr. Koinis and the recommendations given by the state agency consultants. All were assigned weight. As the ALJ's findings are supported by the medical evidence of record, the ALJ did not err in weighing the medical opinions in this case.

## **CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-21] be DENIED and Defendant's Motion for Judgment on the Pleadings [DE-26] be GRANTED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections.   Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 20th day of November 2014.

KIMBERLY A. SWANK
United States Magistrate Judge

11